# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re:                                                  :   Chapter 11
                                                        :
Rentech WP U.S. Inc., *et al.*,[1]                      :   Case No. 17-12958 (CSS)
                                                        :
                        Debtors.                        :   (Jointly Administered)

------------------------------------------------------------- x

## ORDER APPROVING DEBTORS' KEY EMPLOYEE INCENTIVE PLAN

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order, pursuant to

Bankruptcy Code Sections 363(b) and 503(c), approving the Debtors' key employee incentive

plan, as more fully described in the Motion; and the Court having reviewed the Motion, the

Summers Declaration, the *Declaration of Paul Summers, Chief Financial Officer of Rentech WP*

*U.S. Inc. and Rentech, Inc., in Support of Motion of Debtors for Entry of an Order Approving*

*Debtors' Key Employee Incentive Plan* [Docket No. 184], and the *Declaration of Kevin Rendino,*

*Director of Rentech, Inc., in Support of Motion of Debtors for Entry of an Order Approving*

*Debtors' Key Employee Incentive Plan* [Docket No. 185]; and the Court having jurisdiction to

consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion

pursuant to 28 U.S.C. § 157; and it appearing that proper and adequate notice of the Motion has

been given and that no other or further notice is necessary; and upon the record herein; and after

---

[1]     The Debtors, together with the last four digits of each Debtor's U.S. federal tax identification number, are Rentech WP U.S. Inc. (7863) and Rentech, Inc. (7421).  The address for the Debtors is 10880 Wilshire Boulevard, Suite 1101, Los Angeles, CA 90024.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

due deliberation thereon; and the Court having determined that there is good and sufficient cause for the relief granted in this Order, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The relief requested in the Motion is hereby GRANTED, as set forth herein.

2.      Pursuant to Bankruptcy Code Sections 363(b) and 503(c), the KEIP, as modified by the terms of this order (the "**Modified KEIP**"), is hereby approved in its entirety, and the Debtors are hereby authorized to implement the Modified KEIP.

3.      All objections, responses, statements, and comments, if any, in opposition to the KEIP Motion and the Modified KEIP, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the hearing shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

4.      The authorization hereunder to make payments to the Key Employees pursuant to the Modified KEIP shall not create any obligation on the part of the Debtors to make payments under the Modified KEIP, unless the Key Employees meet the necessary conditions under the Modified KEIP.

5.      The Debtors' obligations to pay amounts that become due and owing under the Modified KEIP shall constitute administrative expenses pursuant to Bankruptcy Code Section 503(b), thereby entitled to priority payment pursuant to Bankruptcy Code Section 507(a)(2).

6.      Nothing in this Order approves the payment of any severance or change of control payment.

7.      To the extent there is any inconsistency between the KEIP attached as Exhibit A to the Motion and the terms of the KEIP as described in the Motion, the terms of the KEIP as described in the Motion shall control. Where there are inconsistencies between the terms of this Order, on the one hand, and the terms of the KEIP as described in the Motion or the KEIP

01:22774134.5

2

attached as Exhibit A to the Motion, on the other, the terms of this Order shall control. For the avoidance of doubt, to the extent that the Motion or this Order are silent on a provision, the terms of the KEIP attached as Exhibit A to the Motion shall control.

8.      Notwithstanding anything to the contrary in the Motion or the KEIP attached as Exhibit A to the Motion, the Modified KEIP shall have the following terms:

a.   The total amount of the Pool available to Key Employees shall not exceed $1.68 million.

b.   The total amount of the Pool available to Paul Summers, Nicole Sykes Powe, and Joe Herold (collectively, the "**Executive Officers**") shall not exceed $1.17 million in the aggregate (the "**Executive Officer Cap**").

c.   The total amount of the Pool available to the Key Employees, other than the Executive Officers (collectively, the "**Non-Executive Officers**") shall not exceed $507,000 in the aggregate (the "**Non-Executive Officer Cap**").

d.   The maximum amount of the Minimum Payouts to the Executive Officers on account of all consummated Sale Transactions shall not exceed $100,000 in the aggregate (the "**Executive Minimum Pool**"). Upon the consummation of a Sale Transaction for New England Wood Pellet, $46,000 of the Executive Minimum Pool shall be paid to the Executive Officers in the manner set forth in f below. Upon the consummation of a Sale Transaction for Fulghum Fibres US, $36,000 of the Executive Minimum Pool shall be paid to the Executive Officers in the manner set forth in f below. Upon the consummation of a Sale Transaction for Rentech Canada – Atikokan Facility, $4,000 of the Executive Minimum Pool shall be paid to the Executive Officers in the manner set forth in f below. Upon the consummation of a Sale Transaction for Fulghum Fibres South America, $14,000 of the Executive Minimum Pool shall be paid to the Executive Officers in the manner set forth in f below. Each Executive Officer's percentage ownership of the Executive Minimum Pool shall be proportionate (relative to the other Executive Officers) to his or her percentage ownership of the total Pool as set forth in Paragraph 16 of the Motion. In the event that an Executive Officer's percentage of the total Pool will result in an award to the Executive Officer that exceeds the award to the Executive Officer from the Executive Minimum Pool, the award from the total Pool shall be paid in addition to the amounts from the Executive Minimum Pool, in the manner set forth in subsections g and h below.

e. The maximum amount of the Minimum Payouts to the Non-Executive Officers on account of all consummated Sale Transactions shall not exceed $269,000 in the aggregate (the "**Non-Executive Minimum Pool**"). Upon the consummation of a Sale Transaction for New England Wood Pellet, $123,740 of the Non-Executive Minimum Pool shall be paid to the Executive Officers in the manner set forth in f below. Upon the consummation of a Sale Transaction for Fulghum Fibres US, $96,840 of the Non-Executive Minimum Pool shall be paid to the Non-Executive Officers in the manner set forth in f below. Upon the consummation of a Sale Transaction for Rentech Canada – Atikokan Facility, $10,760 of the Non-Executive Minimum Pool shall be paid to the Non-Executive Officers in the manner set forth in f below. Upon the consummation of a Sale Transaction for Fulghum Fibres South America, $37,660 of the Non-Executive Minimum Pool shall be paid to the Non-Executive Officers in the manner set forth in f below. Each Non-Executive Officer's percentage ownership of the Non-Executive Minimum Pool shall be proportionate (relative to the other Non-Executive Officers) to his or her percentage ownership of the total Pool as set forth in Paragraph 16 of the Motion. In the event that a Non-Executive Officer's percentage of the total Pool will result in an award to the Non-Executive Officer that exceeds the award to the Non-Executive Officer from the Non-Executive Minimum Pool, the award from the total Pool shall be paid in addition to the amounts from the Non-Executive Minimum Pool, in the manner set forth in subsections g and i below.

f. Within 15 days of the closing of any Sale Transaction, each Key Employee will receive 50% of his or her total award payable from the Executive Minimum Pool or the Non-Executive Minimum Pool, as applicable, with respect to such Sale Transaction. The remaining 50% of the award relating to such Sale Transaction shall be payable to the Executive Officers from the Executive Minimum Pool or to the Non-Executive Officers from the Non-Executive Minimum Pool, as applicable, upon the earlier of the sale of the final Business Unit owned by the Company or June 30, 2018. For the avoidance of doubt, for purposes of determining whether a sale of the final Business Unit owned by the Company has taken place, entry of an order confirming a plan of liquidation or a similar or related order by a court in the United States (including this Court) or Canada, as applicable, regarding a Business Unit shall constitute a sale of such Business Unit.

*(for the avoidance of doubt, this proviso relates solely to the timing of payment of the remaining 50% of the award as set forth in this subsection (f) ~~and not~~ to the extent it is earned as otherwise set forth herein)*

g. In the event that (i) an Executive Officer's percentage of the total Pool will result in an award to the Executive Officer that exceeds the award to the Executive Officer from the Executive Minimum Pool (such excess, the "**Executive Officer Excess Award**") or (ii) a Non-Executive Officer's percentage of the total Pool will result in an award to the Non-Executive Officer that exceeds the award to the Non-Executive Officer from the Non-Executive Minimum Pool (such excess, the "**Non-Executive Officer**

Excess Award"), the Executive Officer Excess Award or the Non-Executive Officer Excess Award shall be calculated as follows: the proceeds from any Sale Transaction(s) received by the Debtors or the Debtors' secured lenders shall be divided by $48 million, which amount shall be multiplied by the amount of the Pool created in connection with any such Sale Transaction(s) (which shall not include, for the avoidance of doubt, with respect to the Executive Officer Excess Award, any amount included in the Executive Minimum Pool and with respect to the Non-Executive Officer Excess Award, any amount included in the Non-Executive Minimum Pool), which amount shall be multiplied by each Key Employee's proportionate percentage ownership of the Pool based on the percentages set forth in Paragraph 16 of the Motion.

h. An Executive Officer Excess Award shall be paid to an Executive Officer as follows: (i) 75% of the Executive Officer Excess Award shall be paid to the Executive Officer when the proceeds from any Sale Transaction are received by the Debtors or the Debtors' secured lenders and (ii) 25% of the Executive Officer Excess Award shall be paid to the Executive Officer on the later of when the proceeds from any Sale Transaction are received by the Debtors or the Debtors' secured lenders or when this Court enters an order confirming a chapter 11 plan; *provided, however,* that for the avoidance of doubt, awards to the Executive Officers under the Modified KEIP may not exceed the Executive Officer Cap.

i. 100% of a Non-Executive Officer Excess Award shall be paid to the Non-Executive Officer when the proceeds from any Sale Transaction are received by the Debtors or the Debtors' secured lenders; *provided, however,* that for the avoidance of doubt, awards to the Non-Executive Officers under the Modified KEIP may not exceed the Non-Executive Officer Cap.

j. For the avoidance of doubt, an Executive Officer Excess Award and a Non-Executive Officer Excess Award may become payable either before or after June 30, 2018.

k. As a condition to receipt of any payment under the Modified KEIP, the Key Employees will execute a general release and waiver of claims, including severance and change of control claims, in a form prescribed by the Company; *provided, however,* that, for the avoidance of doubt, amounts authorized to be paid to the Key Employees under this Order or Court's *Final Order (A) Authorizing Payment of Certain Prepetition Workforce Claims, Including Wages, Salaries, and Other Compensation, (B) Authorizing Payment of Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (C) Authorizing Payment of Reimbursement to Employees for Prepetition Expenses, (D) Authorizing Payment of Withholding and Payroll-Related Taxes, (E) Authorizing Payment of Workers' Compensation Obligations,*

*and (F) Authorizing Payment of Prepetition Claims Owing to Administrators and Third-Party Providers* [Docket No. 136] shall not be subject to the general release and waiver of claims.

l.     For the avoidance of doubt, after June 30, 2018, the Key Employees shall not have any obligation to repay any amount received prior to that date under the Modified KEIP.

m.     The Executive Officers shall reasonably assist and cooperate with any liquidating trustee appointed pursuant to the Debtors' chapter 11 plan (or any similar fiduciary) following the effective date of any such plan; *provided, however,* that foregoing shall only apply to the extent that such Executive Officers remain employed by the Company.

9.     There shall be no changes to the terms of the Modified KEIP or the participants thereto absent further order of this Court.

10.     Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365, and all of the Debtors' rights with respect to such matters are expressly reserved.

11.     Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any grounds, (b) a waiver or impairment of the Debtors' rights to dispute any claim on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

12.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

13.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

01:22774134.5

US-DOCS\98468163.4

14.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____ 1/31 ___, 2018
        Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

01:22774134.5

7

US-DOCS\98468163.4